# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROY A MASON,

Plaintiff,

v.

HARTLEY, et al.,

Defendants.

_______________________________/

1:08-cv-00197-LJO-GSA-PC

SECOND SCREENING ORDER

ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND (Doc. 9.)

ORDER FOR CLERK TO SEND COMPLAINT FORM TO PLAINTIFF

THIRTY DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT

## I. RELEVANT PROCEDURAL HISTORY

Roy A. Mason ("Plaintiff") is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on February 8, 2008. (Doc. 1.) On June 2, 2009, the Court issued an order dismissing the Complaint for failure to state a claim, with leave to amend. (Doc. 6.) On July 22, 2009, Plaintiff filed the First Amended Complaint, which is presently before the Court for screening. (Doc. 9.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is only required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). "[P]laintiffs [now] face a higher burden of pleadings facts . . ," Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009), and while a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF AMENDED COMPLAINT

Plaintiff is presently incarcerated at Avenal State Prison ("ASP") in Avenal, California, where the events at issue allegedly occurred. Plaintiff names as defendants J. Hartley (Warden), Lieutenant ("Lt.") Buck, Sergeant ("Sgt.") Ybarra, Sgt. T. Amaro, Sgt. Hurl, and Correctional Counselor Wagner ("Defendants"). Defendants are all employees of the CDCR at ASP.

Plaintiff alleges as follows in the First Amended Complaint. Plaintiff is wheelchair-bound due to a spinal cord injury and suffers from partial paralysis of the lower extremities, chronic back pain, painful spasms in his left leg, muscular atrophy in his lower extremities and buttocks, bladder and bowel incontinence, loss of sensation in his left leg, and loss of equilibrium. Cold air or wind

intensifies his pain to excruciating levels that render him sleepless without his medication. Plaintiff maintains he is disabled within the meaning of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").

On April 31, 2007 at approximately 1:00 p.m., Plaintiff met with Sgt. Amaro on the yard outside the program office to contest his placement in another housing unit which was air-conditioned and was not furnished with a bed suitable for a person with Plaintiff's disabilities. As Plaintiff described the effect of cold air on his disabilities, Sgt. Amaro acted nonchalant and distracted and did not respond. Sgt. Amaro told Plaintiff to wait outside his office as he went inside. After some time, Plaintiff inquired about the whereabouts of Sgt. Amaro and was told by Sgt. Hurl that he "probably went home."

Sgt. Hurl and Sgt. Ybarra asked Plaintiff what he wanted to speak to Sgt. Amaro about. As Plaintiff advised them of his problems, they became visually upset and ordered Plaintiff into the program office. Plaintiff was then called to speak with Lt. Buck in the presence of Sgt. Ybarra and Sgt. Hurl. Plaintiff advised the three officers of his disability problems, which caused Lt. Buck to become hostile. Plaintiff was told by the three officers that he could either move into the alternate housing or go to administrative segregation ("Ad-Seg"). Plaintiff stated that he would rather go to Ad-Seg than to a housing unit with a bunk that would hinder his disabilities and cause him pain. Lt. Hurl then stated, "You go back to your corner." After twenty minutes, Plaintiff told Sgt. Buck that he was willing to move to the proposed housing unit. Sgt. Buck replied that it was "too late" and said, "You will be spending the night with the coffee pot," pointing to a coffee pot inside an office.

After some time, Plaintiff was called into another office to meet with Correctional Counselor Wagner. Wagner looked very angry and asked Plaintiff what was going on. Sgt. Ybarra and Sgt. Hurl were also present. As Plaintiff began to speak, Wagner interrupted him and yelled, "You will not be going to a wheelchair accessible Ad-Seg cell. We are not going to move someone else to accommodate you! Go back over there!" Sometime between 5:00 p.m. and 6:00 p.m., Wagner left the program office, and Plaintiff was left in the corridor for approximately eighteen hours. Due to his detention in the corridor, Plaintiff was not present for some of the routine inmate counts required by California regulations. During the eighteen-hour period, Plaintiff had no blanket, food, or water.

With no access to a wheelchair accessible restroom, Plaintiff was unable to change his diaper and urinated on himself, soaking his clothing. Plaintiff suffered from painful spasms and cramps in his back, legs, and neck, which affected his blood circulation. Plaintiff also developed a urinary tract infection causing excruciating pain in his pelvic area, bleeding from his penis and rectum, headaches, and tension. Plaintiff also suffered emotional distress, humiliation, and anxiety from his concern about long-term effects on his liver and kidneys.

Plaintiff requests monetary damages, attorney fees, and court costs.

**IV. PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

**A. ADA and RA Claims**

Plaintiff claims that Defendants violated his rights under the ADA and RA by refusing to provide him with reasonable accommodations.

Title II of the ADA and § 504 of the RA "both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U. S.

C. § 794. Title II of the ADA and the RA apply to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

"'Title II of the ADA prohibits discrimination in programs of a public entity or discrimination by any such entity.'" Roundtree v. Adams, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005) (quoting Thomas v. Nakatani, 128 F.Supp.2d 684, 691 (D. Haw. 2000)). "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Roundtree, 2005 WL 3284405, at *8 (citing 42 U.S.C. § 12131(1)(A)-(B)). Public entity, "'as it is defined within the statute, does not include individuals.'" Id. (quoting Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).

Individual liability is precluded under Title II of the ADA. Any claim Plaintiff might intend to make under the ADA against Defendants, all who are individuals, is not cognizable. Moreover, in order to state a claim under the ADA and the RA, Plaintiff must have been "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." Armstrong, 124 F.3d at 1023. Plaintiff has alleged no such exclusion or denial. Thus, Plaintiff fails to state a claim under the ADA and the RA.

**B. State Law Claims**

Plaintiff alleges that Defendants failed to adhere to policies mandated by the CDCR, the Department Operations Manual, and Title 15 of the California Code of Regulations. Plaintiff also

claims that defendant Hartley is liable for his failure to train employees to relate to disabled persons. A claim for failure to train employees is based on negligence, which is state tort law.

Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

**C. Supervisory Liability**

Plaintiff asserts that Defendants are "responsible for oversight of constituents and subordinates employed at the prison and implementation of departmental policies, rules, regulations, and operations." (Amd Cmp at 8-11.)

Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 129 S.Ct. at 1948-49; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, No. 09-55233, 2011 WL 477094, at *4-5 (9th Cir. Feb. 11, 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Under section 1983, Plaintiff must demonstrate that each named defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Therefore, to the extent that Plaintiff attempts to hold any of the Defendants liable based on supervisory liability, Plaintiff fails to state a claim.

**D. Due Process**

Plaintiff claims that Defendants violated his rights to due process with regard to their disciplinary actions. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a

cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff has not alleged facts demonstrating that he was subject to a disciplinary action which entitled him to due process protections under federal law. Therefore, Plaintiff fails to state a claim for violation of due process.

**E. Equal Protection**

Plaintiff alleges that Defendants violated his rights to equal protection by failing to enable him to participate on an equal basis in the disciplinary process.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano, 345 F.3d at 1082, Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state

purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

**F. Eighth Amendment - Adverse Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

Plaintiff fails to allege that any of the Defendants deliberately acted to leave him in the corridor for eighteen hours, knowing they were subjecting him to serious injury, or that he suffered from injuries sufficiently grave to state a constitutional claim as a result of Defendants' actions. Therefore, Plaintiff fails to state a claim for violation of the Eighth Amendment with regard to conditions of confinement.

**G. Claim for Attorney Fees**

With regard to attorney fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . ." 42 U.S.C. § 1988(b). However, Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

**V. CONCLUSION AND ORDER**

The Court finds that Plaintiff's First Amended Complaint fails to state a cognizable claim against any of the Defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above should he wish to do so. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Fed. R. Civ. P. 8(a); Iqbal, 129 S.Ct. at 1948-49; Jones, 297 F.3d at 934. There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants relating to unrelated issues arising after February 2, 2008. In addition, Plaintiff should take care to include only those claims that have been exhausted at the administrative level.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

///

///

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's First Amended Complaint, filed on July 22, 2009, is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a Second Amended Complaint curing the deficiencies identified by the Court in this order;
4. Plaintiff shall caption the Second Amended Complaint "Second Amended Complaint" and refer to the case number 1:08-cv-00197-LJO-GSA-PC; and
5. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

**Dated: March 2, 2011** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE